WILLIAM J. McPHERSON, Respondent, v. THE CITY OF NEW YORK, Appellant.

*Municipal corporations — negligence — when municipal corporation not liable for injury caused by unanticipated fall of a window sash.*

The windows, in an approach to a bridge owned by a municipal corporation, constructed with two sashes one above the other and fastened together by hinges, were left open, by turning the upper sash of each window upon the hinges so as to let it hang down over the lower sash. An employee of a street surface railroad, whose duties were on the bridge, turned the upper sash of one of the windows back on its hinges so as to close it, but without fastening it. The sash fell and struck the head of a person who was passing through the bridge, causing injuries for which this action is brought against the city. It appears that there was nothing which required a fastening for the sash, other than the hinges to which it was attached, so far as the care and preservation of the property was concerned,

and that before this time the windows had never been interfered with or closed by any one except the bridge carpenter who had charge of them. *Held*, that, as a matter of law, an ordinarily prudent person would not have anticipated that leaving such windows with the upper sash turned down, as stated, would create a danger in any degree to persons using the bridge, hence the municipality is not liable for the injury sustained.

*McPherson* v. *City of New York*, 145 App. Div. 938, reversed.

(Argued February 2, 1912; decided February 13, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 16, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Archibald R. Watson*, Corporation Counsel (*James D. Bell* of counsel), for appellant.    The plaintiff failed to show any actionable negligence on the part of the defendant at the close of its case, and, at the close of the whole case, the defendant had shown that plaintiff's injury was caused by a person not in its employ.    It was error, therefore, to have submitted this case to the jury, and defendant's exception to the denial of its motion to dismiss the complaint was well taken. (*Loftus* v. *U. F. Co.*, 84 N. Y. 455; *McGrell* v. *B. O. B. Co.*, 153 N. Y. 265.)

*Arthur Weil* for respondent.    Plaintiff showed upon the trial that defendant was negligent in maintaining the windows in the manner described, and the verdict of the jury was according to the weight of evidence. (*Robinson* v. *Consolidated Gas Co.*, 194 N. Y. 37; *Duhme* v. *H. A. Packet Co.*, 184 N. Y. 404; *Pettingill* v. *City of Yonkers*, 116 N. Y. 558; *Servoss* v. *City of Amsterdam*, 64 Misc. Rep. 667.)

CHASE, J.    The city of New York is the owner and in possession and control of the bridge over the East river connecting the boroughs of New York and Brooklyn, in

the city of New York, and known as the Brooklyn bridge. The cars which are run thereon are owned and controlled by others pursuant to a contract or contracts with the city of New York. In one of the terminal buildings on the New York end of the bridge is a mezzanine floor in which are many windows, each of which consists of a double sash fastened together by hinges that are five feet six inches from the floor. For many years the windows so constructed in the terminals of said bridge have been permanently closed about the month of October in each year and fastened with braces so that they could not be opened. It has also been the custom for years about the month of May in each year to open the upper sash of each of said windows by removing such braces and turning the upper sashes upon the hinges so as to let them hang down over the lower sashes and thus leaving them continuously until they are closed and refastened by replacing such braces in the following October. It does not clearly appear whether the sashes in the windows so opened are left simply hanging down from the hinges or whether they are fastened down by an ordinary hook. They are not closed by the city during the summer period even at times of driving storm and wind.

On June 16, 1908, there was a strong wind blowing and one of the employees of a railroad company, whose duties were in said building, turned the upper sash of one of said windows on its hinges so as to close it. A few minutes thereafter it was blown down and such employee of the railroad company again raised it. In a very short time subsequently the plaintiff on his way to the borough of Brooklyn went upon such mezzanine floor, purchased a ticket for a bridge train and continuing in the direction of the train, walked along the southerly wall of such terminal building and as he passed by said window the sash fell turning upon its hinges and struck him on his head, causing the injuries for which this action is brought.

It is not claimed that the defendant is responsible for

an act of an employee of the railroad company as such. It is claimed, however, that the defendant is responsible for the plaintiff's damages because it left the sash hanging upon its hinges, unfastened by some permanent fastening, so that it could not be closed by some meddlesome or malicious person. There was nothing that required a fastening for the sash other than the hinges to which it was attached, so far as the care or preservation of the property is concerned. If a hook was or had been used to fasten the sash down, it did not and would not have prevented it being unhooked for the purpose of turning the sash upon its hinges. There was nothing, therefore, that the defendant could have done to prevent the occurrence described, except to permanently and securely fasten the sash down so that the same could not be unfastened and closed by any one other than an employee or person with tools for that purpose. Although the windows had been used in the same way for years, so far as the bridge officers knew, they had never been previously interfered with or closed by any one other than the bridge carpenter who had charge of them.

The duty of the city is to guard against such dangers as should be anticipated or foreseen in the exercise of reasonable prudence and care. What constitutes reasonable prudence and care depends upon the circumstances in each case.

Upon the facts disclosed in this case we are of opinion that as a matter of law an ordinarily prudent person would not have anticipated that leaving such windows with the upper sash turned down as stated created a danger in any degree to persons using such bridge.

There was, therefore, no question of fact to be left to the jury and the judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.