ANTHONY MASCIARELLI, Appellant, *v.* WALTER L. POWELL, Doing Business as AMERICAN FENCE AND PROTECTION COMPANY, Respondent.

First Department, July 11, 1968.

*Leland Stuart Beck* for appellant.

*William F. McNulty* of counsel (*Samuel F. Simone,* attorney), for respondent.

McNALLY, J. This is an appeal by plaintiff from a judgment of dismissal after a jury trial of a personal injury action. The jury returned a verdict in the sum of $175,000. The court granted defendant's motion to set aside the verdict and dismiss the complaint. We hold the Trial Judge properly dismissed the complaint because plaintiff failed to establish a case of actionable negligence, and plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff was an employee of Grow, Catapano & Orlando, general contractors engaged in the construction of a portion of the Van Wyck Expressway, in the Borough of Queens, including an exit ramp for automobiles. Defendant, Walter L. Powell, doing business as American Fence and Protection Company, was a subcontractor of Grow, Catapano & Orlando for the installation of guardrails on each side of the concrete roadbed of the ramp. The guardrails were to prevent motor vehicles from going over the sides of the ramp. Plaintiff was working on a ledge located outside a section of the guardrail previously installed by employees of defendant on the morning of the accident. The guardrails were not securely attached to the vertical aluminum posts supporting them. Plaintiff, in an endeavor to pull himself up from a kneeling to a standing position, took hold of the end of a rail, which became disengaged from the post, to which it was not yet securely attached, and he fell from the ledge. The work plaintiff was performing had no connection whatsoever with the installation of the guardrails.

At the close of the proof, the Trial Judge reserved decision on the motion of defendant for a dismissal and for a directed verdict, and thereafter submitted the case to the jury solely on the theory that the defendant may have been guilty of common-law negligence in not foreseeing the occurrence of the accident resulting in plaintiff's injury. Plaintiff claims that the proof adduced at the trial was sufficient to support his cause of action against defendant based on the theory of common-law negligence.

Immediately before the accident plaintiff and fellow employees were positioning a 50-foot long metal concrete form on the ledge to permit the pouring of a second or final layer of concrete. The second or final layer of concrete would raise the ledge to an elevation of 10 inches higher than that of the concrete roadbed of the ramp. The 50-foot long metal concrete form came in two sections, which were separately hoisted to the ledge by means of wire cables attached to a hoisting crane. They were then aligned and bolted together. This operation required the services of four men. Two of the men handled the tag lines used to guide the two sections of the metal form into their proper position on the ledge. The other two bolted the two sections together after they were aligned. Plaintiff was one of the two employees assigned to bolt the two sections of the metal concrete form together after they were hoisted to the ledge. As stated previously, this work has no connection with the installation of the guardrails.

The guardrails had been installed by employees of defendant that very morning. The vertical posts supporting the guardrails were 5 inches wide, with U-shaped slots running through them to receive the ends of the horizontal rails. Some of the rails passed all the way through these slots and then continued on the next vertical post, and others ended at a point inside the slots. Each rail was attached to the vertical posts supporting it by set screws. At the time of the accident the rails were not finally adjusted in the slots in the vertical posts supporting them. The set screws which secured them to the post were not wrench-tightened until the final layer of concrete on the ledge of the ramp had been poured and hardened. The contract required the guardrails to be aligned with the ledge of the ramp. This could not be done until the final layer of concrete was poured on the ledge and the concrete had hardened. At the time of the accident plaintiff was on the ledge of the ramp bolting together the two sections of the metal concrete form which had previously been hoisted to the ledge.

It is the settled law of this State that one who uses any part or instrumentality for a purpose for which it was not intended to be used does so at his peril. (*Gasper* v. *Ford Motor Co.,* 13 N Y 2d 104, 111; *Borshowsky* v. *Altman & Co.,* 280 App. Div. 599, affd. 306 N. Y. 798; *Marshall* v. *City of New York,* 283 App. Div. 918, affd. 308 N. Y. 836; *De Jesus* v. *Chase Nat. Bank,* 18 A D 2d 1052, mot. for lv. to app. den. 13 N Y 2d 594; *Mancino* v. *1051 5th Ave. Corp.,* 20 A D 2d 771, affd. 16 N Y 2d 527; *Italiano* v. *Jeffrey Gardens Apts.,* 3 A D 2d 677, affd. 3 N Y 2d 977; *Collins* v. *Noss,* 258 App. Div. 101, affd. 283 N. Y. 595; *O'Connor* v. *1751 Broadway, Inc.,* 1 A D 2d 836, affd. 2 N Y 2d 769; *Lefkowitz* v. *Greenwich Sav. Bank,* 266 App. Div. 995, affd. 293 N. Y. 711.)

In *Gasper* (*supra*) a wrongful death action, plaintiff's intestate, a window cleaner, who was cleaning the windows at defendant's plant, attempted to clean a window on an enclosed bridge or elevated walkway by sitting on a plank which he had placed across the glass face of a horizontally-opened window. The window collapsed under his weight and he fell to the ground about 34 feet below. Even though the evidence established that defendant actually knew that the windows in this part of its plant had previously been cleaned in this same manner, the Court of Appeals held that this was insufficient to charge defendant with negligence in failing to provide the intestate with a safe place to work, citing as authority for this proposition the holding of this court in *Borshowsky* (*supra*). After pointing out that the accident occurred only because the intestate was putting the window to an unintended use, the court said (p. 111): " Defendant's knowledge that the windows had been cleaned previously by the same method does not fasten liability upon it (*Borshowsky* v. *Altman & Co.,* 280 App. Div. 599, affd. 306 N. Y. 798, *supra*). Ford had no duty to supervise the method by which decedent cleaned the windows or to supply him with the equipment necessary to perform the work (*Borshowsky* v. *Altman & Co., supra*) ; in fact, by custom in the trade, the choice of equipment and method was left entirely to the master window cleaner, the decedent."

In the case at bar, defendant, a subcontractor of plaintiff's employer, obviously had no control over plaintiff or the place where he was working or the manner in which he performed his work. Plaintiff chose to stand out on the narrow ledge outside the guardrail previously installed by the employees of defendant and attempted to support himself by holding one of the guardrails, without first ascertaining whether or not it was securely attached to the post that supported it. It was

his employer's obligation to furnish plaintiff with a safe place to work. This responsibility may not now be shifted to the shoulders of defendant on the theory, first, that he should have known that plaintiff would use the guardrail as a support although it had not yet been wrench-screwed to the post to which it was attached, and, secondly, that, knowing this, defendant therefore was under a common-law duty to protect him from the danger of injury which he had thus invited.

In *Borshowsky* (*supra*) a window cleaner who was cleaning the glass panels on the marquee in front of defendant's store, fell through the marquee and sustained injuries resulting in his death when the rusted strips of metal supporting the glass panels of the marquee on which he was walking broke. In holding defendant could not be charged with liability for the decedent's death, this court, after pointing out that at the time the accident occurred the marquee was not being used for the purpose for which it was designed and intended to be used, and that the duty of supplying decedent with adequate protective devices for the work he was performing was one which the law placed squarely on the shoulders of his own employer, held (p. 603) that " The circumstance that Altman's may have known that window cleaners did walk and kneel upon " the strips of metal supporting the glass panels of marquees which they were cleaning " in performing their work, does not add to the strength of plaintiff's case." This holding was unanimously affirmed by the Court of Appeals and reaffirmed by it in *Gasper* (*supra*).

In the instant case there is insufficient proof to support a jury finding that defendant knew that the employees of the general contractor were using the guardrails previously installed by his employees, but not yet securely affixed to the posts to which they were attached, as supports, and even if there were such proof, it would be insufficient to charge defendant with liability for the injury sustained by plaintiff on the theory of common-law negligence under *Borshowsky* and *Gasper*. This was not a facility created by respondent for the use of his employees with knowledge that it would be similarly utilized by employees of other contractors. (*McGlone* v. *Angus, Inc.,* 248 N. Y. 197.)

If we were not affirming a dismissal of the complaint, we would nevertheless have affirmed the setting aside of the verdict and ordered a new trial on the ground that the verdict was grossly excessive.

The judgment appealed from should be affirmed, with costs.

CAPOZZOLI, J. (dissenting in part). There is sufficient in the record as to the completion of the railing, and as to the use of those railings by the carpenters, with the knowledge of the defendant, to necessitate a new trial in order to determine whether the accident, in which plaintiff was injured, was reasonably foreseeable by the defendant. Therefore, while I agree with the majority that the verdict was excessive, and properly set aside, I disagree with its dismissal of the complaint and I vote for a new trial.

BOTEIN, P. J., EAGER and RABIN, JJ., concur with McNALLY, J.; CAPOZZOLI, J., dissents in part in opinion.

Judgment affirmed, with $50 costs and disbursements to the respondent.